Oyez! Oyez! Oyez! All persons have in business before the Honorable, the United States Court of Appeals for the District of Columbia Circuit, are admonished to draw near and give their attention, for the Court is now sitting. God save the United States and this Honorable Court. Please be seated, please. Case number 14-3089, United States of America v. Donnell Crews, also known as Donnell C. Crews, also known as Darnell C. Crews Appellant. Mr. Hess for the Appellant, Mr. Coleman for the Appellant. Good morning, Your Honors, and may it please the Court, Darrell Hess on behalf of the Appellant, Donnell Crews. Your Honors, this Court stated in United States v. Latham that it would be a rare case where a trial court's evidentiary ruling rose to the level of a constitutional violation. Your Honors, it's a privilege to be with you this morning because this is such a rare case. Here, the District Court abused its discretion when it decided, when it ruled, that it would strike the entire testimony of Mr. Crews' one and only defense witness, Vickima Ensley, after Ms. Ensley invoked her Fifth Amendment right against self-incrimination during cross-examination. Our standard of review is plein air, correct? No, Your Honor, it is not. It is abuse of discretion. This Court applied the abuse of discretion standard in United States v. Wilson, despite the government arguing for a plein air standard, and this Court explicitly stated in United States v. Mahdi that when reviewing a trial court's determination of whether to exclude witness testimony, the standard of review is abuse of discretion. In addition, Your Honor... Can we pause over Wilson? So in Wilson, the reason that we reviewed it for abuse of discretion and not for plein air was that the District Court's statement indicated it understood that the nature of the objection was a confrontation clause. But there was an objection. In this case, there was no objection. That's the reason we reviewed for plein air, not for abuse of discretion. I would disagree, Chief Judge Scarlin. Plein air applies under Federal Rule 103. Wait, can we just pause over? Do you agree with my reading of Wilson? I don't disagree with it only because the government's brief in Wilson is filed under seal, so I don't actually know why the government argued for plein air, but I do agree... I'm looking at just the language of the Court. I'm not looking at any secret briefs or anything. Sure. So I would agree with you that in Wilson, this Court applied abuse of discretion because it said it was apparent from the context that there was a confrontation clause. Objection. Right. But there was no objection in this case. That's correct, Your Honor. So what case do you have for the proposition that we apply abuse of discretion where there was no objection? Your Honor, I'm aware of no case where plein air has been reviewed for the decision to strike a witness testimony. Abuse of discretion has always been applied. I'm only aware of one case, Your Honor, where this has ever come up before, and this is the direct answer to Your Honor's question, and that's in State v. Schnell, a Missouri Court of Appeals case. To my knowledge, that is the only other published case where a defense counsel failed to object to a trial court striking the witness's entire testimony. So what was the district judge supposed to do here, given the statement from the witness's counsel, if she's called again to the stand, she's going to assert her fifth based on my advice, and she will not answer any further questions? The district court needed to inquire into what that statement meant, because that statement is... On its face, the statement meant she will not answer any further questions. But that statement comes right after an explanation that she has a valid Fifth Amendment ground for not answering questions that could be used in a later perjury indictment. And so the context here is that Ms. Ensley invoked the fifth only after they started to impeach her and proffered to the court that this could be grounds for impeachment. But the counsel then goes through the reasons, and it's not just the one issue, but I'm more concerned about speaking with government counsel. It's my impression that this is not the only source of potential impeachment that they may have for Ms. Ensley. I think it's the government's position that what she said in the grand jury may not have been entirely accurate, as was her prior testimony at the trial, the previous trial. And so, I guess more broadly, just looking at what the counsel said in describing that, the conclusion, and everyone here had been through this case a couple times. And it seemed like everyone was on the same page. Look, she's done as a witness because of the fifth. She's not going to be able to talk about anything. Well, Your Honor, that's reading a lot into that one statement. And admittedly, that is – It's the one statement plus the context of the whole discussion, which I've read. So it seems to me everyone knew what was going on. The judge said, you know, I mean, there were a ton of telephone calls. I'm not surprised by her decision. And he says, you know, if I were the government, I would be concerned to use different language than that. That's right, Your Honor, yes. But the context here is that she may have just committed perjury. And so her direct testimony touched on a whole host of other topics that had nothing to do with whether she'd ever spoken with Antoine Crowder. Right. And the difficulty is that it seems as if the court and counsel for both sides and counsel for Ms. Emslie are operating on an assumption that there's impeachment material that goes to other aspects of her testimony. The problem is because there was no objection from Cruz's counsel at trial, there was no occasion to make a clearer record on that. And that's why it hampers our review, and that's why we take the more deferential standard of review. If somebody had stepped up and said, whoa, the only thing we've seen is something that impeaches with respect to whether she'd ever received a phone call from Crowder. If that were an objection then, then the district judge should have said, well, okay, what do you propose? And counsel for Cruz could have said, well, can we do something that strikes that but that respects the rest of the testimony? But we also have some suggestion that the Fifth Amendment issues broader than that. What do we do with that? Except that, Your Honor, here this court is not hindered in its review. This is not a situation like United States v. Thompson, which the government cited in its brief, where there was a failure by defense counsel to make an offer of proof. And so we simply had no idea what the substance of the excluded testimony was. Here we know exactly the substance of the excluded testimony because it is her entire direct testimony. But we don't know the scope. We don't know the extent to which any of that was baseless or impeachable and put her in further jeopardy. That's exactly right, Your Honor. And we don't know because the district court did not apply the correct legal standard. That is the abuse of discretion. What the district court needed to do, and admittedly it would have been helped if defense counsel suggested this, but the district court needed, pursuant to Cardeo, which is the proper legal standard, to inquire precisely on what is the scope of the question she's now refusing to answer. That was never done. It was never done certainly because defense counsel never suggested it. But that doesn't cure the constitutional violation. The counsel said any further questions. So that does sound like any further questions. So there's the inquiry. There's the answer. My client is not going to answer any further questions. In the context of a speech talking about any further questions that would support perjury, and as we said in our reply brief, certainly if counsel would have been asked, well, is she invoking the Fifth with respect to questions about topics that she discussed in her direct, she would have no valid Fifth Amendment privilege. So, for instance, in her direct, she gave great detail about the events of that morning from her perspective. And in the first trial, she answered all of the cross-examination questions about the events. The details, I guess, just to go to that, are we were doing stuff before I dropped them off. I dropped them off. I went home. I put the keys on the table. I went up and took a nap. And then next thing I know, the cops were outside. I mean, not a lot of detail. Well, and what does the detail help you, I think? Sure. The one detail that I would add to that is, and I would never loan my keys to any of these individuals, and my keys in my car were stolen. And, in fact, Mr. Cruz's counsel tried to make that statement in his closing argument, and the district court rightfully sustained an objection because that testimony was true. That's the only part, the important part of it is that keys were stolen? Because, after all, it was her car. There's no doubt about that, right? There's no doubt that it was her car. Her car was driven to the hospital with two people who participated in the robbery. That is correct, Your Honor. So how she got the keys doesn't make that much difference. I'm not understanding the importance of the fact that they went to the 7-Eleven and that they went to the gas station and got an alternator. Why is that relevant? Your Honor, I believe the defense counsel was trying to argue in his closing argument. The relevance of that was to show that Mr. Cruz had no intent to commit a robbery at that point. So this is the getaway car, and they want to know, they want to make sure the alternator works and that there's gas in the getaway car. So how is this going to help you? I don't understand how they can help you. Well, I believe the alternator actually was correct. Alternator is for another car. But it's to show, I think, defense counsel was trying to show Mr. Cruz's whereabouts that morning and show that it makes no sense. I mean, the closing argument is essentially no one would do this. No one would take it. Why wouldn't you go to a 7-Eleven before a robbery? I don't understand that. No, I think the argument is why would you take your fiancé's car with personalized license plates and use that in a robbery was the argument. The other option was the Jaguar, right? Well, as Mr. Cruz's defense counsel points out, Anthony James had a car with paper tags. I mean, the argument, it was not made this bluntly, was no one would be this stupid. But they did use the fiancé's car with the tags. So she could have made the same argument. Why would Cruz have done that? Cruz wasn't involved. He would never have done that. That argument wasn't precluded. No, but the argument is certainly less convincing when you don't have the owner of that car's testimony saying this is what happened to my keys, this is what I normally did, and they were stolen. And that's the prejudice. If I may, I'd like to return to Your Honor's initial question about standard of review. There are three reasons why abuse of discretion should be applied here. In doing that, could you address Thompson? Absolutely, yes, Your Honor. So the first, as I said, is that every federal court that has considered whether it's appropriate to strike a witness's testimony has done so under the abuse of discretion standard. I'm aware of no federal case that has done so under plain error. So that's the first. What about United States v. Ortiz? In Ortiz, we applied plain error where the district court failed to inquire sui sponte whether the witness could properly assert the fifth. That's right, Your Honor, and I believe this goes to Thompson. So I don't remember if in Ortiz it was a Rule 103 analysis, but I think it was, and in Thompson it explicitly was a federal rule of evidence 103 analysis. And what 103A2 says, relevant for Thompson and I believe relevant for Ortiz, is that if you're going to claim error based on a ruling excluding evidence, you have to make an offer of proof so that the district court knows the substance of that excluded evidence and, as this court said in Thompson, so that an appellate court is not hindered in its review because they couldn't properly evaluate the prejudice or potential prejudice. Here, this court is not hindered. We know, apparent from the context, to sort of paraphrase this court's opinion from Wilson, exactly what the excluded testimony was, which was Vakima Ensley's direct testimony. So this court doesn't have to guess as to the substance of the excluded testimony, which is your more typical Rule 103 situation and was the situation in Thompson. In Thompson, the defense counsel attempted to introduce, I believe it was hearsay statements. They were excluded, and according to this court's opinion in Thompson, defense counsel just moved on. There was no proffer. The concern is not about the nature of the excluded testimony. That's one aspect. But the concern is about what is the breadth of the assertion of the Fifth. And in Ortiz, we said, Ortiz's counsel never suggested there was a need for the district court to inquire whether the witness could properly assert a blanket Fifth Amendment privilege or only a more limited privilege. Counsel acceded to the validity of the asserted blanket privilege. And so in that case, we applied plain error. And it seems that the similar thing happened here, that counsel acceded to an assertion of a blanket privilege and didn't say, wait, wait, there are all these aspects of her testimony that are unaffected by the risk of perjury. So that's where I think Ortiz does seem to be on all fours with your case, and I'm not sure I've heard from you how you distinguish it. I think the distinguishing fact here is here this was Mr. Cruz's one and only defense witness. This was his entire defense. And so as this court recognized in Lathard, although it's going to be rare, you could have a situation, and we would submit this is such a situation, where an evidentiary ruling rises to the level of a constitutional violation. Here Mr. Cruz did not have the ability to present any defense. This is on all fours with the Ninth Circuit's opinion from Negrete Gonzalez. In Negrete Gonzalez, the Ninth Circuit overturned a conviction because it found that the defendant's key witness had her entire testimony struck because she refused to answer questions on a collateral subject. Is that not error? I mean, if we disagree with you on the standard of review, are you still arguing that we should send it back? Yes, absolutely, Your Honor. So even if this court were to apply the plein air standard of review, we would submit, and we submitted in our reply brief, that this does constitute plein air. So as this court knows, there are four requirements for plein air. The first is deviating from a legal rule, and here the legal rule is the Cardio standard, and the government in its brief doesn't even dispute that the Cardio standard is the proper standard for evaluating what to do when a witness invokes the fifth impression. It's not obvious this is the third category of Cardio, though. Yes, I would agree with that, Your Honor, precisely because no inquiry was made. I'm sorry, conversation earlier demonstrated, yes. But you argue that anything that involves credibility is collateral. Yes. And that's not what Cardio says. Cardio says any attack on general credibility is collateral, but an attack on credibility regarding direct testimony is not collateral, correct? That's right, Your Honor. And so this is a case in which the attack involves her direct testimony, not just her general credibility, but her credibility in this particular example that we already, the only one we really know about what their impeachment would have been, was on whether or not she knew Donnell. I mean, Antoine Carter. I'm sorry. Yeah. Respectfully, I would disagree, Your Honor. I would say this is an attack generally on her credibility, because although you're right, a portion of her direct testimony, she was asked four questions about whether she had ever spoken with Antoine Carter. So in that sense, Your Honor, you're right. It was a small portion of her direct testimony, but it was not the majority of her direct testimony, and it certainly would not be part of the government's case-in-chief. So other courts have defined what constitutes collateral as the test is whether the adverse party would be able to prove it in their case-in-chief. If they could, it's direct. It's not collateral. If they couldn't, then it's a general attack on credibility. I'm not sure which case is that. I'm looking at the follow-up Second Circuit cases, Frank. I want to follow up on Cardillo. They all are going on to this question about whether it goes to the direct. Here, I thought the most important part of her direct was that she didn't know this guy, and so it's very doubtful that her boyfriend knew this guy. That was the point of that testimony, and the government has evidence that both she and her boyfriend knew the guy from the taped telephone conversation. That goes directly to her direct testimony. I believe, based on the proffer that the government made, they were just using it to impeach her in response to her question that she's never had a phone call from Antoine Crowder, and her answer in the first trial was, yes, I had a phone call, but I've never spoken with him. So whether she's ever received a phone call from Antoine Crowder is not direct either to her testimony or to the government's case-in-chief here. And Cardillo also says that the third Cardillo category could be a general attack on credibility or it could be cumulative, and here it's also cumulative. We know in the first trial that the government cross-examined Ms. Ensley in two other ways, or specifically I should say impeached her in two other ways. First, they asked her whether she knew Kirk Deans, and when she said no, they impeached her with her grand jury testimony, and then second, they asked her whether she lived in Silver Spring, and when she said yes, they impeached her by playing a video of her police interview where she denied living in Silver Spring. So these are multiple ways the government had to impeach Ms. Ensley generally, and I would submit that that is what Ms. Ensley's attorney was representing when he started to say to the court, based on my conversations with the government, my concern here is there are multiple grounds for perjury against my client, so she's invoking the fifth. She's invoking the fifth with respect to these prior inconsistent statements, but she was never asked a single question on cross-examination that went to her direct testimony other than have you ever had a conversation with Anton Crowder. Well, it seems like that would have been the beginning of cross-examination on the question of whether she knew him. She said she didn't know him before. I would agree, Your Honor, and our point would simply be that Cardillo requires an inquiry at that point, that the heir was not asking counsel or Ms. Ensley, what do you mean by this statement that she won't answer any further questions? The district court is a little bit hampered in that, in that, you know, we have said don't require too much probing because that undermines the privilege itself. If you want the person to really spell out on the record what the risk is of self-incrimination, you're defeating the privilege. So what exactly do you believe the district court was required to do in this situation to protect Mr. Cruz's confrontation rights while also respecting Ms. Ensley's feminine rights? The district court was required to apply Cardillo and inquire into precisely whether she was refusing to answer questions that would go directly to her direct testimony, such as what they did that morning, whether Mr. Cruz lived with her, the various topics she addressed in her direct, or whether she was invoking the Fifth on the much narrower topic of questions that could be used for a later perjury and indictment, which is I would submit the context of her attorney's statement saying she has a valid Fifth Amendment privilege here. That statement doesn't make any sense if applied much more broadly to everything she talked about in direct because, in fact, she wouldn't. Even if she had it to begin with, she would have waived it. So that's the inquiry that needed to happen. And admittedly, defense counsel didn't raise it. But nonetheless, we still have a district court applying the wrong legal standard. The district court never considered that and instead simply threw up his hands and said, I can't parse through. It all has to go. I don't think his statement, I can't parse through, is supported by the record. At most, we have four questions in direct examination that went to whether she knew or had first spoke with Antoine Crowder. And it's your position that she did not waive the privilege by having testified at the grand jury and in the first trial? Yes. I mean, I believe that's right, although I don't think it's necessary to answer that question here. But, yes, I think that's right because it's been a while since I've reviewed the grand jury testimony. I don't think she was explicitly asked the exact same question. I don't think she certainly played the recorded phone call. So she wasn't playing the recorded phone call either in the grand jury or in the first trial, and that's why that issue went unrecognized and unaddressed in the first trial. That's correct. But she did testify in the first trial. I have not had a phone conversation with him. I don't know him. That's right. And so in the first trial, they impeached her on cross-examination by saying, well, then why is it that your phone number is in his phone? And they could have done the same thing here, and, you know, she probably had waived any privilege to that. But I don't think she waived a privilege with respect to answering questions about the recorded phone call that she had never previously. Well, no, but the issue is whether she falsely testified on the issue of whether she knew someone, not whether she falsely testified just with respect to the phone call, right? I mean, she made the same testimony in the first trial. I'm not sure you can put the cat back in the bag. Certainly with respect to her direct and her cross on the first trial, I would agree with you that it's waived. But I would submit that this recorded phone call is a new topic. And so her attorney invoked the privilege, and that was not questioned below. Nobody said, wait a minute, she's waived that privilege, she has to testify. And had it done so, I mean, you might be right, but that issue was never raised below. Instead, the district court said, well, then the whole thing has to go. And our position is that is the abuse of discretion, that is the legal error. Or if this court wants to apply the plain error standard, that is the plain error. Thank you. Your Honors, I see that I'm well out of time. There was a second issue on appeal. We are happy to rest on our arguments on that second issue. But if you would like to hear from me or ask any questions on that second issue, I'm happy to address them. My only question is, can you pinpoint for us how that prejudiced your client? Because we already had in the record testimony that Dean had been shot in the face, and Cruz was not the person who left Dean at the hospital. So it's just unclear what the incremental further prejudice is, one way or the other. The jury has heard that Cruz has put Dean in a car and gone elsewhere. Cruz himself went elsewhere when Dean had been shot in the face. The prejudice is because Cruz's entire defense, his explanation for the DNA on the gloves and for everything, is that he was trying to be a good guy here. He was responding to gunshots out of concern for his brother. He was trying to keep Dean from going back to the CBS to potentially cause more problems or hurt more people. He was trying to be a good guy. And that is less credible if you think that he left Kirk Deans to die. Why do we think anybody left him to die? The testimony from Brennan is that the car drove up right to the emergency room as the nurse was coming out of the emergency room, and the nurse then immediately got the person. I'm not sure how, where does the argument come from that anybody left somebody to die? But I'm not sure, and I don't think Cruz's lawyer argued that this was all Cruz's doing. Cruz put him in the car and said take him to the hospital and then left. I don't understand why that would, I mean, the argument that he was abandoned is obviously not true because he was taken to the hospital. So I don't understand how you can speculate that the jury would blame the person who didn't go in the car versus the person that, as long as the guy gets to the hospital. It is the argument that he was not abandoned and he was in good enough condition to go back to CBS and potentially do more harm. And saying he was gravely injured, I could see gray matter. Our position is it undercuts both of those. Did your, did the lawyer below for Cruz, he didn't make that argument, did he? He didn't make that argument to the judge with respect to the issue, did he? He moved for a mistrial and argued for prejudice. I don't think he articulated those. The only prejudice argument was made by the other lawyer who had a drop and fall theory, which I don't understand and neither did the district court. That's right. You're correct. Okay. Further questions? Thank you very much, Your Honor. Good morning. My name is Nick Coleman and I represent the United States in this case. I'd like to begin by addressing the issue of Ms. Ensley's testimony. We do think that plain error does apply here when the appellant made no objection to the district court's action in striking Ms. Ensley's testimony beyond simply requesting that the 7-11 video come in, which the district court accommodated. Beyond that, he made no objection, did not ask for any inquiry to be made of Ms. Ensley, did not ask that the testimony be parsed, did not ask for any of these alternative remedies. And in that situation, not only is there no record on which this court can sort of try to do its own parsing of the testimony and determine whether or not some chunk of the testimony should have come in, but in addition, there's a strategic component for the defense involved in every one of the alternative procedures that they've suggested here, and the reason why is this. For example, if Ms. Ensley had been put back on the stand to invoke her Fifth Amendment privilege or to have basically to only testify to certain parts but then to have the district court instruct the jury that she had invoked her Fifth Amendment privilege and for them to draw whatever inferences they should, it was very clear that appellant's counsel at trial did not want that. He was very clear he did not want the jury to be told anything about Ms. Ensley invoking the Fifth. And that's because, after all, that could have a disproportionate effect. The jury might speculate as to why she's invoking her Fifth. This is on a slightly different topic, though. What you're talking about are the three procedures that they suggested. Yes. But I thought what you were addressing was the judge could have asked, are you not going to testify about this, are you not going to testify about this, are you not going to testify about this? Those are two different issues, aren't they? I think the fact that the court isn't asked to do that, and I think as this court has held in both Ortiz and in Thompson, in this kind of situation where there's no request for that kind of an inquiry to be made and no argument is being made, then the district court just isn't required to do that and certainly the burden is then on... You think a district court's not required to do that, even if the defense counsel had not said she's not going to answer any further questions? I'm not sure. I mean, obviously that would be a different case, Your Honor. I mean, here, if she had only invoked her Fifth, if counsel for Ms. Ensley had said she's only invoking her Fifth Amendment privilege as to this call, nothing else, then that might well have invited further inquiry. Well, what is she going to answer questions about? And what does Mr. Cruz want to do about that? Because, after all, it's not just that you get to refuse to answer questions and the jury never hears about that. What happens is the jury is going to be informed one way or another that she is declining to answer questions and that they can draw appropriate inferences from it. So, again, it's not like a freebie. So, to me, the difference, though, between at least one difference, and I'm curious about your views about whether it makes a difference, between Thompson and Ortiz on one hand and this case on the other, is in those cases the assertion of the privilege had a logic that would support, without more, without further inquiry, would support a blanket elimination of the testimony because the person was a co-defendant or, you know, the very act of testifying and carried with it kind of a logic that impugned all the testimony. Here, it's quite different. The only thing we know is that, apparently, she received a phone call from Crowder. When I was reading the transcript, I thought she was going to say, oh, that, right, I forgot, I don't know him. Yeah, I relayed this thing from this person who didn't mean anything to me. You know, and that's not inconsistent with the record that we have. Maybe it's tangential. Maybe there's a much bigger issue, but we don't know. So, in this situation, where the assertion of the privilege, sort of prima facie, only seems to go to a limited aspect of her testimony, it doesn't seem consistent, necessarily, with Thompson and Ortiz to say, in this kind of situation, the district judge does need to probe what the basis is of the privilege, at least a little bit. Two points here. First, Cruz's counsel did not ask that any inquiry be made or object to this assertion of blanket privilege. Ms. Ensley's counsel also did not indicate that she was only asserting a limited Fifth Amendment privilege. He said she's not going to answer any further questions, and then when she comes into the courtroom at that point, she tells the judge herself, I'm not going to answer any further questions on the advice of counsel. I do agree that the question of whether she could invoke her privilege as to everything at that point is a tricky one. But in part, it's tricky because appellant never requested that any further inquiry be made. Right. I do agree that the line between whether you're entitled to not answer questions because of the risk of perjury and whether you're entitled not to answer questions about new subjects, such as the calls, and this wasn't the only call. As is very clear from the record, there were other calls which the government was intending to cross her about, and she'd never been confronted with these calls during the first trial. Whether that then carried over to all the other subjects, it is a difficult question to answer. But on this record, where there was no objection made, the plain error standard does clearly apply. And I haven't heard appellant's counsel here cite any case where plain error wasn't applied, where no objection was made, no request was made for further inquiry, where essentially the defense simply acquiesced. And in that situation, plain error does apply, and he simply has not shown plain error that would justify reversal here. The difficulty is that it appears that the district judge and Ensley's counsel were very concerned for Ensley. And, you know, our question is, what about the confrontation rights of the defendant? And, you know, one way of reading the transcript is that the district judge was so concerned to protect Ensley, you know, for the very same reason that Mr. Cruz wanted her on the witness stand. Here's a very educated person who has some gravitas, and it's associated with the defendant, and, you know, but has the district judge done what is required to protect the confrontation rights? In this situation, where the logic of the initial assertion, standing alone, and you say there are other calls, you have no idea how much of her testimony those other calls might affect. Again, though, in terms of whether this court believes that appellant's right to present the witness was violated here, appellant did not assert that. We understand. He didn't do that. And what is very interesting is that when Ms. Ensley, when the district judge asked, you know, has she been consulted with counsel, Ms. Ensley initially says, I don't need to. And it was appellant's own counsel who then said, I think she should consult with counsel. So, again, appellant's counsel did absolutely nothing in the trial court to try to assert appellant's right to put Ms. Ensley on the stand and make sure that her testimony remained on the record beyond insisting that the 7-11 video come in. And that was left in. So I'm not really sure why the district judge was required to go beyond that and essentially almost step into the shoes of counsel and say, well, you know what, I'm concerned here. Maybe we should see if there are further chunks of her testimony that can be put in. Of course, I'm going to have to give an instruction to the jury about that. Again, these are all things that, again, brings us back to my initial point, which is all of the other solutions beyond striking for testimony were things that probably you wouldn't be able to do as a district judge without appellant's acquiescence. In other words, he's got to make the choice about whether he wants to pursue those. And the fact that he didn't even ask for that inquiry to be made shows it just wasn't that important to him, and at best he gets plain error review here. Is there no situation in which she could testify on some subjects and not publicly on the stand, take her fifth with respect to others? The exact procedure that one would follow, I haven't dealt with a case where that was done. My understanding is that even if she's not going to invoke the Fifth Amendment privilege, sort of with that drama in front of the jury, you're still entitled, the government would still have been entitled to an instruction to the jury, even outside her presence, that she had refused to answer questions that otherwise would have been pertinent and relevant, and she had elected not to testify and that they could draw whatever inferences from it. It's pretty clear from the record here that appellant's counsel did not want any suggestion being made to the jury that something untoward had happened. I mean, that's why he didn't even want the district judge to say that it was unfortunate that her testimony had to be struck. And the one thing he definitely said, we don't want to have happen, is to have her invoke her Fifth Amendment privilege. I mean, his defense counsel had gotten the testimony in and without cross. Well, I mean... So, in other words, even though it was, quote, struck, the jury had heard it,  I would urge this Court, if it's interested, to look at the August 2013 cross-examination of Ms. Ensley at the first trial. I would say it was pretty extensive, and it did show that there were some pretty big holes in her testimony. In particular, she had no explanation, even when asked, for why she let out appellant short of his house, even though they were supposed to be driving to his house together. She had no explanation for that, which is a pretty big gap in her testimony. She admitted to things such as that even though she was waiting outside the courtroom during the trial, she openly admitted that members of appellant's family had been telling her what was going on in the courtroom before she took the stand. In other words, appellant's counsel would have been well aware that the cross-examination of her was going to be extensive and it might be quite effective. So, again, whether this, I think, goes to, you know, even if we assume the jury did follow its instructions and disregard the direct testimony entirely, this does go to the question of whether or not, for example, he would have wanted this testimony to be read in from the first trial. All of these were strategic decisions about how to handle Ms. Ensley's testimony, and in the absence of an objection or a request for some different procedure to be followed, at best, he can get plain error, and that can't be shown on this record, we submit. I do, you know, and again, I think, you know, if you look, getting back to the question of what, whether he could even show prejudice, Ms. Ensley's testimony simply didn't establish that much for his defense. She did not provide him with an alibi. That was very explicit because she admitted that she let him out for no reason short of his house, and the next, you know, well before the robbery, or the attempted robbery, and she doesn't see him again until he's being arrested by the police later. Beyond that, you know, the one thing that she did dispute was how, was whether or not she gave the keys angrily to the co-conspirators, or whether, you know, they somehow were snuck out of her house, although even there she doesn't testify that she heard anybody take them from downstairs. So on that record, we submit that even if there had been plain error, a felon could not show the kind of substantial prejudice or miscarriage of justice that would justify reversal. Can you fill us in at all on what happened with Dean between when the car pulled away from the CVS and when it arrived at the hospital? It's very confusing. Right. My understanding, I think this may have been conveyed during some pre-trial conferences to the district court. The government does not know how precisely Mr. Dean sustained that fatal gunshot wound. Between the time it was not delivered by Mr. Whittaker, that was simply a gunshot to his cheek. How the fatal gunshot came to be delivered to him is simply unknown. Obviously, it occurred during a very short window of time between when Mr. Crowder and Mr. Dean drive off and when they arrived at the hospital. We simply don't know. That's not something for which Mr. Crowder is being prosecuted? Not that I'm aware of, no. We simply don't have that information as to how he came to be shot. Again, that was part of the reason why the parties made an effort not to try to bring that up during the trial because it wasn't directly connected to this offense, or at least not in the sense of being delivered during the offense. Because it's unknown how or why he was shot, we simply don't have that kind of knowledge. We do submit that the idea that there was some sort of substantial prejudice here to Appellant is just not tenable because, at best, it would just show that he was hurt worse than Mr. Crowder and Appellant thought when they had Mr. Crowder driving to the hospital. But he was taken directly to the hospital, and the government's evidence was that we had photographs of him being caught, Mr. Crowder being caught running red lights and speeding on the way. So it's not like he took his time. And the last Mr. Cruz saw him, he was trying to run back. Right, he was ambulatory. He was someone they were struggling with, and it seemed that he was being taken directly. And that was the government's testimony. That was the government's case. I think that's one important thing to note. If Mr. Dean had been given a drop-and-fall gunshot, most of the government's case wouldn't make a lot of sense because he wouldn't have been able to even leave the CBS. So I'm not – again, it's very hard to discern the prejudice here to Appellant. At most, the prejudice would have been to Mr. Crowder for this unexplained fatal head wound. But really to Appellant, I mean, there was no – certainly the government did not dispute that Mr. Dean was fully ambulatory, able to talk, yell, argue, and even try to go back to the scene, and had to be convinced and pulled into the car. That was the government's evidence, and certainly the government's case, and the government never disputed that that was the case. If there are no further questions, we'd respectfully submit that the judgment of the district court should be affirmed. Thank you. Is there any time left for – we'll give you another two minutes anyway. Thank you, Your Honor. I will be very brief. Your Honor, just two brief points on rebuttal. First, my colleague stated that the district court should not be required to step in the shoes of defense counsel in a situation where a witness invokes a commitment. My response to that, Your Honor, is don't forget we are talking about what is undoubtedly a drastic remedy, an extreme sanction. And when every court that has looked at this, every court that has applied Cardeo, begins with that premise, that the most extreme sanction here would be striking the entire direct testimony. But there are a lot of strategic reasons why that made sense, given the alternatives. Yes. It's not just defense counsel inattention here, it seems to me, from reading the record. It is a strategic judgment, given all the circumstances, that this is making the best of a bad situation, potentially. That may be, Your Honor, but on this record, the district court simply never inquired into that, never asked the question, are you truly trying to invoke the Fifth? Oh, but you couldn't ask the question that Judge Kavanaugh is asking. Defense counsel, is it your strategy that you want to keep this testimony on direct because the jury will regard it regardless of my instruction not to, and because it will avoid cross-examination by the government? That question could not have been asked. Yes, Your Honor, of course. My point, though, is that the district court needed to and, in fact, was required to, and the error here, it did not ask Ms. Ensley or Ms. Ensley's counsel, your statement that you're invoking the Fifth, do you really mean? You're not going to answer any questions. And it did not inquire into whether the privilege was waived as to some subjects, or simply it never applied that legal standard. One of the proposed procedures that you suggest in your brief is to require her to take the Fifth on the stand, right? No, Your Honor, and if that is how our brief is read, then I apologize. It was simply to do the third Cardeo standard, which is category, excuse me, which is to allow her to take the Fifth and strike a portion of her testimony. And I would agree with my colleague, I think procedurally that could have been done  defense counsel didn't want that to happen. I mean, that is true. Not only didn't they want it, but en banc we've instructed courts not to do that. So that would have been reversible error. Yes, that's right, Your Honor. And so my final point, Your Honor, as I see that I'm out of time, is the government has argued that this can't be plain error because there's no prejudice. And I would simply submit that there was prejudice. This was the defendant's only witness. It's analogous to the Ninth Circuit's case of Negrete Gonzalez. Admittedly, that was reviewed under abuse of discretion. But there, the Ninth Circuit recognized that there was no other witness that could duplicate this witness's testimony. This was the key defense witness. Here, this was the only defense witness, and the same logic applies. No other witness could testify as to what happened to Ms. Sundsley's keys and what happened to her car. Thank you, Your Honor. Thank you. I'll take the matter under submission. Mr. Hess, I'm sorry. I was looking for Mr. Wayne. I see Mr. Wayne. I was looking for his name, though. You were appointed by the court to take this case, the two of you, and we're very grateful for your assistance. Also grateful for the assistance of the United States. Thank you all. Thank you, Your Honor.
judges: Garland, Kavanaugh, Pillard